

**ORDERED in the Southern District of Florida on April 6, 2026.**

_Scott M. Grossman_
_____
**Scott M. Grossman, Chief Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

BANCO MASTER, S.A.,                              Case No. 25-24568-SMG
BANCO LETSBANK, S.A.,
BANCO MASTER DE INVESTIMENTOS, S.A.,             Chapter 15
and MASTER S/A CORRETORA DE CÂMBIO,
TÍTULOS E VALORES MOBILIÁRIOS,

     Debtors in a Foreign Proceeding.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DANIEL
VORCARO'S MOTIONS FOR PROTECTIVE ORDER TO LIMIT OR
PROHIBIT RULE 2004 EXAMINATION SUBPOENAS DUCES TECUM**

Daniel Vorcaro – a controlling shareholder and former administrator for

chapter 15 debtors Banco Master, S.A., Banco LetsBank, S.A., Banco Master de

Investimentos, S.A., and Master S/A Corretora de Câmbio, Títulos e Valores

Mobiliários, who are subject to the extrajudicial liquidation proceeding pending

before the Central Bank of Brazil under proceeding number PE 258696 – filed two

motions for protective order[1] under Local Rule 2004-1(C) challenging 28 *Notices of Taking Rule 2004 Examination Duces Tecum*[2] served by EFB Regimes Especiais de Empresas, Ltda., represented by Eduardo Felix Bianchini, as the extrajudicial liquidator (the Foreign Representative) of the debtors. Upon consideration of the motions for protective order, the Foreign Representative's response,[3] the supplemental briefs filed by both parties,[4] the arguments of counsel at the March 4, 2026 hearing,[5] and the record in this case, for the reasons that follow, the Court will grant in part and deny in part Mr. Vorcaro's motions.

## Relevant Background

On December 10, 2025, the Foreign Representative filed a petition seeking recognition of the debtors' Brazilian liquidation proceeding.[6] After a hearing at which only Mr. Vorcaro contested recognition, on January 8, 2026, the Court entered an order under 11 U.S.C. § 1517 recognizing the Brazilian liquidation proceeding.[7] In its recognition order, the Court authorized the Foreign Representative "to examine witnesses, take evidence or seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of the Debtors pursuant to 11 U.S.C. § 1521(a)(4), the Federal Rules of Bankruptcy Procedure, including without limitation

---

[1] Dkt. Nos. 47, 55.
[2] Dkt. Nos. 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 49, 50, 51, 52, 53, 54.
[3] Dkt. No. 63.
[4] Dkt. Nos. 73, 74, 78.
[5] Dkt. No. 71.
[6] Dkt. No. 1.
[7] Dkt. No. 23.

the procedure of [Federal] Rule [of Bankruptcy Procedure] 2004 and Local Rule 2004-1, without further order of this Court."[8]

From January 29, 2026 through February 19, 2026, the Foreign Representative issued 28 subpoenas to entities seeking discovery under Federal Rule of Bankruptcy Procedure 2004. These subpoenas seek discovery from art dealers, luxury retailers, and others with respect to both the debtors and sixteen other entities – including Mr. Vorcaro – defined as the "Asset Freeze Parties."[9] Under Brazilian law, these parties are subject to one or more of automatic asset freeze orders entered by the Central Bank of Brazil in connection with the debtors' extrajudicial liquidation. Mr. Vorcaro objects to the subpoenas, arguing that they are contrary to the purpose of chapter 15, they are overly broad and improper under Rule 2004, and that good cause exists to modify their scope to exclude inquiry into Mr. Vorcaro's personal affairs.[10] With respect to two of the subpoenas, Mr. Vorcaro – who is not the subpoenaed party – argues that those subpoenas violate Federal Rule of Civil Procedure 45(c)(2)(A)'s requirement that a subpoena not command the production of documents, electronically stored information, or other tangible things at a place more than 100 miles from where the subpoenaed party resides.

The Foreign Representative argues in response that the subpoenas are within the scope of Rule 2004, that Mr. Vorcaro generally lacks standing to object to the subpoenas or if he has standing, that he has failed to identify any cognizable privacy

---

[8] *Id.*

[9] *See* Dkt. No. 2, at 26–41.

[10] Dkt. Nos. 47, 55.

interest he seeks to protect, and that Mr. Vorcaro fails to identify sufficient good cause to modify the subpoenas. The Court scheduled a hearing on Mr. Vorcaro's motions for protective order for March 4, 2026.[11]

Two days before the hearing – on March 2, 2026 – the Foreign Representative filed a complaint in this Court against one of the subpoenaed parties – Sozo Real Estate Inc.[12] – together with Henrique M. Vorcaro (Mr. Vorcaro's father), and Natalia Vorcaro Zettel (Mr. Vorcaro's sister).[13] The complaint asserts claims for constructive trust, equitable lien, and avoidance of certain transactions under the Brazilian Civil Code related to Sozo's purchase of real property in Windermere, Florida.[14] Based on the filing of this complaint, at the March 4 hearing, Mr. Vorcaro also argued that the "pending proceeding rule" – which holds that "once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination"[15] – bars the discovery sought in the Rule 2004 subpoenas.

### Discussion

Federal Rule of Bankruptcy Procedure 2004 provides in relevant part that:

**(a)** **In General.** On a party in interest's motion, the court may order the examination of any entity.

---

[11] Dkt. Nos. 48, 56.

[12] Dkt. No. 46.

[13] Adv. No. 26-1074-SMG (Bankr. S.D. Fla. 2026).

[14] *Id.* at Dkt. No. 1.

[15] *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (citing *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.)*, 127 B.R. 267, 274 (D. Colo. 1991); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674–75 (Bankr. E.D. Pa. 1990); *In re Bakalis*, 199 B.R. 443, 447–48 (Bankr. E.D.N.Y. 1996); *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *First Fin. Sav. Assoc. v. Kipp (In re Kipp)*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988)).

**(b)     Scope of the Examination.**

**(1)     *In General.*** The examination of an entity under this Rule 2004, or of a debtor under §343, may relate only to:

**(A)**     the debtor's acts, conduct, or property;
**(B)**     the debtor's liabilities and financial condition;
**(C)**     any matter that may affect the administration of the debtor's estate; or
**(D)**     the debtor's right to a discharge.

As written, Rule 2004 requires a party to first move for authority to conduct the examination. Under Local Rule 2004-1, however, in this district, a party can seek Rule 2004 discovery without prior court authority. The caveat is that under Local Rule 2004-1(C) any interested party may then move for a protective order, and that motion stays the examination until the Court rules on it.

Under the local rule, the movant seeking a protective order must state the reasons for prohibiting, limiting, or rescheduling the examination. This procedural mechanism, however, does not relieve the party seeking to conduct the Rule 2004 examination of its initial burden to demonstrate that the information sought falls within the permissible scope of Rule 2004. That burden remains with the party seeking the examination – in this case, the Foreign Representative – to establish that it is entitled to conduct the examination in the first instance. Only after that threshold showing is made does the burden shift to the movant to demonstrate that a protective order is warranted.

## I.     Standing.

Before addressing the merits, the Foreign Representative argues that Mr. Vorcaro – as a non-subpoenaed party – lacks standing to raise relevance or

burden objections to subpoenas directed to third parties.[16] To rule on his motions for protective order in this instance, however, the Court can assume – without deciding – that Mr. Vorcaro has standing to object to the subpoenas. This is because the Court will be denying most of the relief he seeks on the merits. And as to the limited basis on which the Court will be granting a protective order, the Court is doing so of its own volition based on the due process concerns discussed below and not necessarily because Mr. Vorcaro raised it.

## II.   Merits.

The Court next considers whether the Foreign Representative has established that it is entitled to conduct the examinations. The scope of Rule 2004 discovery is "unfettered and broad."[17] As explained by Judge Walrath in *In re Washington Mutual, Inc.*:[18]

> A Rule 2004 examination is commonly recognized as more in the nature of a fishing expedition. The purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate. Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred. There are, however, limits to the use of Rule 2004 examinations. It may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry.[19]

---

[16] Dkt. No. 63, at 2, 6–9.

[17] *Bennett Funding Grp.*, 203 B.R. at 28 (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983)); *cf. In re Foerst*, 93 F. 190, 191 (S.D.N.Y. 1899) ("In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor.").

[18] 408 B.R. 45 (Bankr. D. Del. 2009).

[19] *Id.* at 50 (cleaned up; internal citations omitted).

The availability of this "unfettered and broad" discovery is an important tool in implementing the statutory purpose of the UNCITRAL Model Law on Cross-Border Insolvency, which has been adopted by over 60 countries,[20] including the United States which incorporated it as chapter 15 of the Bankruptcy Code. Under 11 U.S.C. § 1501:

> (a) The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
>> (1) cooperation between—
>>
>>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>>
>>> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>>
>> (2) greater legal certainty for trade and investment;
>>
>> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>>
>> (4) protection and maximization of the value of the debtor's assets; and
>>
>> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

As Judge Tjoflat explained in his erudite concurrence in *In re Al Zawawi*,[21] among other objectives, "'[t]he cross-border cooperation mechanisms established by the Model Law are designed to confront' the 'increasing problem' of '[f]raud by insolvent

---

[20] United Nations Commission on International Trade Law (UNCITRAL), *Status: UNCITRAL Model Law on Cross-Border Insolvency (1997)*, https://uncitral.un.org/en/texts/insolvency/modellaw/cross-border_insolvency/status (last visited Apr. 6, 2026).
[21] 97 F.4th 1244, 1257–77 (11th Cir. 2024) (Tjoflat, J., concurring).

debtors, in particular by concealing assets or transferring them to foreign jurisdictions.'"[22] Consistent with both the statutory purpose of chapter 15, as well as its goals as described by Judge Tjoflat, in its recognition order the Court authorized the Foreign Representative under 11 U.S.C. § 1521(a)(4) to seek testimony, evidence, and information concerning the debtors' financial condition and related matters.[23]

The subpoenas here seek discovery from art dealers, luxury retailers, and other entities with respect to assets and transactions involving both the debtors and the Asset Freeze Parties. These requests are grounded in Brazilian law governing extrajudicial liquidation proceedings and are consistent with the basic inquiries permitted under chapter 15 and Rule 2004. Article 36 of Brazilian Law No. 6,024[24] provides that, upon the commencement of a financial institution's extrajudicial liquidation proceeding, the assets of managers of the financial institution, and in certain circumstances other related persons, are rendered inalienable pending investigation and liquidation of liabilities. The asset freeze can also be extended to individuals who contributed to the institution's financial condition and to persons who acquired assets under circumstances suggesting an effort to evade the law. Article 2 of Brazilian Law No. 9,447[25] then makes those same inalienability restrictions applicable to persons or entities that directly or indirectly control the financial institution. In other words, Brazilian law extends the asset freeze beyond

---

[22] *Id.* at 1262 (quoting Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency, UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY (1997), ¶ 6 https://uncitral.un.org/en/texts/insolvency/modellaw/cross-border_insolvency).
[23] Dkt. No. 23, ¶ 8.
[24] Braz. Law No. 6,024, of Mar. 13, 1974, art. 36.
[25] Braz. Law No. 9,447, of Mar. 14, 1997, art. 2.

8

formal insiders to include controlling parties and affiliated entities whose assets may bear a direct relationship to the debtors' financial affairs.

These provisions of Brazilian law – together with the provisions and purpose of chapter 15 – justify the discovery sought by the Foreign Representative. Brazilian law identifies the Asset Freeze Parties as individuals and entities whose assets may be intertwined with, derived from, or otherwise related to the debtors' liabilities and estates. That statutory framework aligns with the objectives of chapter 15, which include protecting the interests of creditors and other interested parties and maximizing the value of the debtors' assets, as well as addressing the risk that assets may be concealed or transferred beyond the reach of creditors. Consistent with those objectives, section 1521(a)(4) expressly authorizes a court, upon recognition, to permit the examination of witnesses and the taking of evidence concerning the debtor's assets, affairs, and financial condition. The Court's recognition order in this case granted that relief and authorized the Foreign Representative to conduct discovery under Rule 2004. Accordingly, the Court concludes that the discovery sought here falls well within the broad scope of Rule 2004.

To the extent Mr. Vorcaro argues that the Foreign Representative must first show some evidence of dissipation or diversion of assets before it can take this discovery, neither the text nor the scope of Rule 2004 supports this position.[26]

---

[26] This position, if adopted, would create a circular conundrum. Mr. Vorcaro argues that the Foreign Representative first must establish that there was misconduct before it can take discovery, but the Foreign Representative argues that it needs discovery to first determine whether there was misconduct. The Foreign Representative's position prevails. "One of the primary purposes of a Rule 2004 examination is as a *pre-litigation* device." *Washington Mut.*, 408 B.R. at 53 (citing *In re Table Talk, Inc.*, 51 B.R. 143, 145–46 (Bankr. D. Mass. 1985)) (emphasis added). If the Foreign Representative already had sufficient evidence of misconduct, it would not need Rule 2004 discovery

Nothing in Rule 2004 limits the examination to confirming already-established misconduct. To the contrary, Rule 2004 permits a thorough investigation that may lead to the discovery of assets, financial information, or other matters relevant to the administration of the estate, including "whether wrongdoing has occurred."[27] Given the breadth of Rule 2004 – including its use of the permissive term "may" in authorizing inquiry into "any matter that may affect the administration of the debtor's estate"[28] – the Court concludes that the subpoenas fall well within the rule's expansive scope.

With the Foreign Representative having met its burden of demonstrating that the requested discovery falls within the scope of Rule 2004, the burden then shifts to Mr. Vorcaro under Local Rule 2004-1(C) to show why the examination should be prohibited or limited. Mr. Vorcaro asserts that the examination would violate protected privacy rights. When pressed at the hearing, however, as to what specific privacy rights he was asserting, his attorney identified only general privacy rights under the Florida Constitution – without explaining how those rights would be properly invoked by Mr. Vorcaro, who appears to be a Brazilian national – and referenced Brazil's banking secrecy laws, again without establishing their applicability in this context. Mr. Vorcaro also expressed concern that the examination is effectively morphing into premature post-judgment asset discovery. Rule 2004, however, is expressly designed to permit a broad investigation that may lead to the

---

and could simply file a complaint. To require the Foreign Representative to first establish that there was wrongdoing before being permitted this discovery puts the proverbial cart before the horse.

[27] 408 B.R. at 50.

[28] Fed. R. Bankr. P. 2004(b)(1)(C).

discovery of assets or other matters relevant to the administration of the estate. Simply put, as far as scope, Mr. Vorcaro has not carried his burden of demonstrating that a protective order is warranted.

## III.    The Pending Proceeding Rule.

One limitation on Rule 2004 discovery, however, is the pending proceeding rule, which applies when Rule 2004 discovery is sought in "the shadow of pending adversary proceedings or litigation in other forums."[29] Under this "well recognized rule,"[30] once an adversary proceeding or contested matter has been commenced, discovery must be conducted under Federal Rules of Civil Procedure 26–37[31] rather than under Rule 2004. "The basis for the prohibition lies in the distinction between the broad fishing expedition-like nature of the Rule 2004 exam . . . and the more restrictive nature of discovery under FED. R. BANKR. P. 7026–7037."[32] Thus, "courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."[33]

---

[29] *Washington Mut.*, 408 B.R. at 50.

[30] *Bennett Funding Grp.*, 203 B.R. at 28.

[31] Made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7026–37 and in contested matters by Federal Rule of Bankruptcy Procedure 9014(c). *See* Fed. R. Bankr. P. 7026–37, 9014.

[32] *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr. D.N.J. 1998); *see also In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards."). *Compare Bakalis*, 199 B.R. at 447 (stating that a Rule 2004 examination is a broad "fishing expedition"), *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (same), and *In re Johns–Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (same), *with In re Dinubilo*, 177 B.R. 932, 940 n.12 (E.D. Cal. 1993) ("Discovery under the Federal Rules of Civil Procedure offers: notice to every party of the intention to depose any person; a right to have counsel present; all objections must be noted; cross examination is permitted."); William L. Norton, Jr., 2 NORTON BANKRUPTCY LAW AND PRACTICE § 30:1 (2d ed. 1998) ("Discovery rules are much more stringent since any person has the right to have counsel present and all rules of evidence apply . . .").

[33] *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) (citing *2435 Plainfield Ave.*, 223 B.R. at 456; *Bennett Funding Grp.*, 203 B.R. at 28; *Valley Forge Plaza*, 109 B.R. at 675).

Again, as Judge Walrath explained in *Washington Mutual*:

> The reasons supporting these restrictions on the use of Rule 2004 examinations are twofold. First, the discovery rules apply both in adversary proceedings and contested matters. Furthermore, a Rule 2004 examination does not provide the same procedural safeguards as Rule 7026. For example, a witness has no general right to representation by counsel during a deposition, and the right to object to immaterial or improper questions is limited.
>
> * * *
>
> The primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure. Yet aggressive application of the "pending proceeding" rule may prevent legitimate Rule 2004 examinations on matters wholly unrelated to the pending proceeding, thereby interfering with the trustee's fiduciary duty to maximize estate assets.[34]

The mere pendency of litigation, however, does not necessarily bring all Rule 2004 discovery to a halt. Rather, as explained by Judge Gerling in *Bennett Funding Group*:[35]

> Discovery of evidence related to the pending proceeding must be accomplished in accord with more restrictive provisions of Fed. R. Bankr. P., . . . while *unrelated* discovery should not be subject to those rules simply because there is an adversary proceeding pending. . . . Thus a trustee, like a creditor, must look to Fed. R. Bankr. P. 7026 *et seq.* after an adversary proceeding is commenced for discovery as to both entities affected by the proceeding and issues addressed in the proceeding.[36]

---

[34] 408 B.R. at 50–51 (cleaned up; internal citations omitted). *See also Bennett Funding Grp.,* 203 B.R. at 29 (noting that precluding the use of the 2004 examination device when *any* adversary proceeding has been commenced would allow entities unaffected by the proceeding to avoid examination); *Drexel Burnham,* 123 B.R. at 708 ("A trustee in bankruptcy . . . is under a duty to maximize the realization of estate liquidation.").

[35] 203 B.R. 24.

[36] *Id.* at 29 (cleaned up; internal citations omitted). *See also In re Buick,* 174 B.R. 299, 305 (Bankr. D. Colo. 1994) (noting that "even after the trustee has commenced adversary proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not parties to or are not affected by the pending adversary proceeding(s)."); *Blinder, Robinson,* 127 B.R. at 275 ("Entities not affected by the adversary proceeding do not require the greater protections afforded under the Federal Rules, and the Trustee should be permitted to examine them under Rule 2004."); *In re Int'l Fibercom, Inc.,* 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the 'pending proceeding' rule does not apply."); *In*

As acknowledged by the Foreign Representative in its supplemental brief,[37] four of the subpoenas seek discovery with respect to the Windermere property that is the subject of the Foreign Representative's complaint – those issued to Winter Park National Bank;[38] to Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.;[39] to Erik Magno;[40] and to Sozo Real Estate, Inc.[41] Under the pending proceeding rule, the discovery sought through these subpoenas must now be sought in the adversary proceeding under Federal Rules of Civil Procedure 7026–37.

To the extent the Foreign Representative argues that the pending proceeding rule is not properly raised by Mr. Vorcaro because he is not a defendant in the related adversary proceeding,[42] the Court need not resolve that issue. The pending proceeding rule serves important due process and procedural fairness interests, including ensuring that discovery proceeds within the structured framework applicable to pending litigation. These protections are not dependent on which party raises the issue. The Court will therefore apply and enforce the pending proceeding rule here, notwithstanding that Mr. Vorcaro raised it.

To that end, the Court disagrees with the Foreign Representative's argument[43] that the pending proceeding rule does not apply when the Rule 2004 discovery was

---

*re M4 Enters., Inc.,* 190 B.R. 471, 475 n. 4 (Bankr. N.D. Ga. 1995) (finding that the 2004 examination did not relate to the pending adversary proceeding and thus the "pending proceeding" rule did not apply).

[37] Dkt. No. 74, at 9.
[38] Dkt. No. 43.
[39] Dkt. No. 44.
[40] Dkt. No. 45.
[41] Dkt. No. 46.
[42] Dkt. No. 74, at 7–9.
[43] Dkt. No. 74, at 9.

13

issued before commencement of the related litigation. The pending proceeding rule is grounded in preventing parties from using the broad and flexible scope of Rule 2004 to circumvent the more restrictive discovery framework that governs adversary proceedings and contested matters. That concern does not disappear merely because the Rule 2004 request was served before litigation formally commenced.

When applying the pending proceeding rule, the focus is whether the discovery sought concerns the same subject matter as the later-filed litigation and whether allowing the examination to proceed would effectively permit an end-run around the procedural safeguards of the Federal Rules of Civil Procedure. If the issues overlap, rigidly adhering to a "first-served" timing rule would elevate form over substance and invite strategic behavior that might encourage parties to issue sweeping Rule 2004 subpoenas in anticipation of litigation to secure broader discovery than would otherwise be permitted.

Once litigation has commenced, the rationale for limiting Rule 2004 discovery becomes paramount. At that point, the parties are entitled to the structure, protections, and judicial oversight that accompany discovery under Part VII of the Bankruptcy Rules, including relevance limitations, proportionality considerations, and the availability of objections under Federal Rules of Civil Procedure 26 through 37. Allowing a previously requested Rule 2004 examination to proceed unchecked in parallel with an adversary proceeding risks undermining that framework and creating inconsistent discovery standards within the same dispute. Accordingly, the better-reasoned approach is to apply the pending proceeding rule based on the

14

existence of related litigation at the time the Court is asked to enforce or limit the Rule 2004 discovery, not merely at the time the subpoena was issued. The Court will therefore grant Mr. Vorcaro's motion for protective order with respect to the Winter Park National Bank;[44] Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.;[45] Erik Magno;[46] and Sozo Real Estate, Inc.[47] Rule 2004 subpoenas.

As for the other 24 subpoenas, the discovery sought falls well within the scope of Rule 2004 and is consistent with the relief granted to the Foreign Representative in the recognition order under 11 U.S.C. § 1521(a)(4).[48] Mr. Vorcaro's motions for protective order will therefore be denied as to those 24 subpoenas.[49]

## IV.    Rule 45's Geographic Limits.

Finally, Mr. Vorcaro objects to two of the subpoenas based on Rule 45(c)(2)(A)'s requirement that a subpoena not command the production of documents, electronically stored information, or other tangible things at a place more than 100 miles from where the subpoenaed party resides. The Bank of New York Mellon – which is one of the subpoenaed parties[50] – filed a limited joinder in Mr. Vorcaro's motion, solely as to the 100-mile issue.[51] As to the other subpoenaed party on whose behalf Mr. Vorcaro objects – Kodiak Trust Co.[52] – the issue is moot because the

---

[44] Dkt. No. 43.
[45] Dkt. No. 44.
[46] Dkt. No. 45.
[47] Dkt. No. 46.
[48] Dkt. No. 23.
[49] Dkt. Nos. 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 49, 50, 51, 52, 53, 54.
[50] Dkt. No. 53.
[51] Dkt. No. 67.
[52] Dkt. No. 52.

Foreign Representative has issued a replacement subpoena.[53] With respect to Bank of New York Mellon, however, the objection is well-taken, and the request for a protective order based on Rule 45(c)(2)(A)'s geographic limits[54] will be granted.

<u>**Conclusion**</u>

Based on the foregoing, it is **ORDERED** that:

1.     Mr. Vorcaro's motions for protective order[55] are **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

2.     Mr. Vorcaro's motion for protective order[56] is **GRANTED** as to the following *Notices of Taking Rule 2004 Examination Duces Tecum*:

- *Notice of Taking Rule 2004 Examination Duces Tecum of Winter Park National Bank*;[57]
- *Notice of Taking Rule 2004 Examination Duces Tecum of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A.*;[58]
- *Notice of Taking Rule 2004 Examination Duces Tecum of Erik Magno*;[59] and
- *Notice of Taking Rule 2004 Examination Duces Tecum of Sozo Real Estate, Inc.*[60]

The discovery sought in these subpoenas must instead be sought in Adversary Proceeding No. 26-1074, under Federal Rules of Civil Procedure 26–37, made applicable by Federal Rules of Bankruptcy Procedure 7026–7037.

---

[53] Dkt. No. 54.
[54] Dkt. No. 67.
[55] Dkt. Nos. 47, 55.
[56] Dkt. No. 47.
[57] Dkt. No. 43.
[58] Dkt. No. 44.
[59] Dkt. No. 45.
[60] Dkt. No. 46.

3.      Bank of New York Mellon's limited joinder[61] in Mr. Vorcaro's motion for protective order[62] as to the *Notice of Taking Rule 2004 Examination Duces Tecum of The Bank of New York Mellon*[63] is **GRANTED**. To the extent this subpoena seeks the production of documents, electronically stored information, or tangible things at a place more than 100 miles from where Bank of New York Mellon resides or regularly transacts business in person, the subpoena is **QUASHED**, without prejudice to the Foreign Representative reissuing a subpoena that complies with the geographic limits of Federal Rule of Civil Procedure 45, made applicable by Federal Rules of Bankruptcy Procedure 2004(c) and 9016.

4.      With respect to the remainder of the Rule 2004 discovery as to which Mr. Vorcaro has sought a protective order, his motions[64] are **DENIED**.

# # #

*Copies furnished to all counsel of record via CM/ECF.*

---

[61] Dkt. No. 67.
[62] Dkt. No. 55.
[63] Dkt. No. 53.
[64] Dkt. Nos. 47, 55.